**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| John Valentine<br>3524 South Black Horse Pike<br>Williamstown, NJ 08094<br>and<br>Valentine's Farm, LLC<br>3524 Black Horse Pike<br>Williamstown, NJ 08094<br><br>Plaintiffs, | CASE NO.<br><br>**COMPLAINT** |

                                    v.

Monroe Township, a Municipal
Corporation for the State of New Jersey
125 Virginia Avenue
Williamstown, NJ 08094
and
Salvatore "Skip" Tomarchio
125 Virginia Avenue
Williamstown, NJ 08094
and
Tara Park n/k/a Tara Nelms
125 Virginia Avenue
Williamstown, NJ 08094
and
Richard DiLucia, Mayor of Monroe Twp.
125 Virginia Avenue
Williamstown, NJ 08094
and
Ralph Manfredi,
125 Virginia Avenue
Williamstown, NJ 08094
and
Steven D'Amico,
125 Virginia Avenue
Williamstown, NJ 08094
and
Rosemary Flaherty,
125 Virginia Avenue
Williamstown, NJ 08094
and
Fictitious defendants John Does 1-5 and
Jane Does 1-5

1

Defendants.

Plaintiffs, John Valentine and Valentine's Farm, LLC, residing at 3524 Black Horse Pike in Williamstown, Township of Monroe, County of Gloucester and State of New Jersey, by way of Complaint against the Defendants, say the following:

## THE PARTIES TO THIS ACTION

1.     John Valentine is a resident of Monroe Township living at 3524 South Black Horse Pike, Williamstown, Monroe Township, State of New Jersey.

2.     Valentine's Farm, LLC ("Valentine's Farm" or "Company") is a New Jersey Limited Liability Company formed by Mr. Valentine in the year 2020, with its principal offices being in New Jersey..

3.     Salvatore "Skip" Tomarchio has been the Fire Marshall of the Township of Monroe, Gloucester, County, New Jersey for all relevant times noted in this Complaint.

4.     Tara Park n/k/a Tara Nelms ("TP") was one of the Zoning Officers of the Township of Monroe, Gloucester, County, New Jersey from at least January of 2020 to the date of this Complaint.

5.     Richard DiLucia was and is the Mayor of the Township of Monroe, Gloucester County, New Jersey for all relevant times noted in this Complaint.

6.     Rosemary Flaherty ("RF") was one of the Zoning Officers of the Township of Monroe, Gloucester County, New Jersey from approximately 2018 to approximately December of 2019.

2

7.      Ralph Manfredi was the Code Enforcement Officer of the Township of Monroe, Gloucester County, New Jersey for all relevant times noted in this Complaint.

8.      Steven D'Amico is a Plumbing Sub Code Inspector for the Township of Monroe, Gloucester County, New Jersey for all relevant times noted in this Complaint.

## JURISDICTION AND VENUE

9.      Plaintiff repeats and makes a part hereof all of the allegations contained in paragraphs 1 through 8 of this Complaint as if same were more fully set forth at length herein.

10.     The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §§1983 and 1988 as the Plaintiff claims that violations of its civil rights have occurred based upon the conduct of the Defendants hereto.

11.     Plaintiff further invokes the pendent jurisdiction of this Court to hear and decide those claims arising under the Constitution and the laws of the State of New Jersey.

12.     Venue is proper in this district pursuant to 28 U.S.C. §1391 (b) (1) in that the district is where the Defendants reside and where the property that is the subject matter of this litigation is situated.

## FACTS COMMON TO ALL COUNTS
## FIRST COUNT

1.      John Valentine ("Mr. Valentine") is the owner of certain real property located at 3524 South Black Horse Pike, Town of Williamstown of Monroe Township, State of New Jersey at all times mentioned herein being also known as block 5901, Lot 4 ("Property").

2.      Mr. Valentine purchased the Property in 2016 for the purposes of operating a farm and farm related business.

3

3.      Mr. Valentine is also the principal owner, member and Manager of Valentine's Farm, LLC.

4.      Valentine's Farm, LLC ("Valentine's Farm" or "Company") is a New Jersey Limited Liability Company formed by Mr. Valentine in the year 2020.

5.      Valentine's Farm was formed by Mr. Valentine to operate a farming business on the Property.

6.      Mr. Valentine's neighbors residing at 3546 South Black Horse Pike, Williamstown, New Jersey ("Neighbors") are related to the Defendant, Salvatore "Skip" Tormarchio ("Fire Marshall").

7.      The Fire Marshall is a long-time resident of Monroe Township, New Jersey.

8.      Monroe Township, New Jersey, Gloucester County, New Jersey ("Township") is a body Politic and Corporate of the State of New Jersey organized according to Title 40 of the New Jersey Statutes.

9.      The Fire Marshall has been employed by the Township as Fire Marshall for over twenty-five years.

10.      Upon information and belief, The Fire Marshall is employed by the Township's Department of Public Safety and has been since at least 2016.

11.      The Fire Marshall has bragged to others of his political connections in the Township.

12.      The Fire Marshall is and claims to be "politically connected" in Monroe Township.

13.      Beginning in or around 2018, Mr. Valentine and the Neighbors engaged in a series of disputes regarding various use issues of their respective properties.

4

14.     The dispute between Mr. Valentine and the Neighbors continues to the date of this complaint.

15.     Beginning in June of 2018, Mr. Valentine noticed a change in the way he was being treated by Township officials when dealing with the Township for official business.

16.     On or about June 4, 2018 Mr. Valentine made application to the Township Zoning Officer, Tara Park n/k/a Tara Nelms ("TP") ("Zoning Officer"), for a change of use to allow him to have livestock on his farm ("Livestock Permit").

17.     Mr. Valentine was granted the approval verbally but the Zoning Officer refused to deliver the written approval to him.

18.     On or about December 12, 2018 the Township Zoning Officer issued a violation notice, which alleges that Mr. Valentine violated his Live Stock by among other things by not having shelter for his animals.  The Township Code has no such requirement.

19.     Beginning in or around December of 2018, one of the Neighbors (the Fire Marshall's son) begins to taunt Mr. Valentine by saying words to the effect that "My father owns this town and you're never going to get anything done."

20.     Mr. Valentine is a lawful owner and user of firearms.

21.     The Township, being located in the New Jersey Pinelands and being largely rural, has no ordinance prohibiting the discharge of firearms except such discharge is prohibited with 450 feet of a residence.

22.     Mr. Valentine has had numerous complaints made by others, mostly the Neighbors, to the Township police regarding his target practice activities on his Property.

23.     In order to ameliorate complaints about target practice on his Property the Township police and other Officials in the Township encouraged Mr. Valentine to construct a "Berm" to fire into during target practice.

24.     On or about July 3, 2018 the Township Zoning Officer issues Permit number 8814 to construct a "Safety Berm."

25.     The Township Ordinances and Code do not require a Safety Berm for shooting.

26.     Permit 8814 to construct a berm was issued to Mr. Valentine even though the Zoning Officer had no legal authority to issue said permit.

27.     The Township, being located in the New Jersey Pinelands, land use and development in the Township is subject to regulation under the Pinelands Protection Act, N.J.S.A. 13:18A-1 et. seq. ("Pinelands Act").

29.     The Zoning Officer issued the permit for the safety berm knowing that if Mr. Valentine did construct the Berm he would be in violation of the Pinelands Act.

30.     Beginning in 2018, the Neighbors commenced various building and construction activities on their property located at 3546 South Black Horse Pike.

31.     The Neighbors' construction activities included, clearing, grading, filling and construction of a road behind their residence without all appropriate permits and in violation of the Township Code.

32.     When Mr. Valentine reported the Neighbors' various violations, the Zoning Officer took no action.

33.     The construction activities on the Neighbors' property caused flooding on to Mr. Valentine's Property.

6

34.     In 2018 the trees on Mr. Valentine's Property began to die as a result of the construction activities on the Neighbors' property and flooding caused thereby.

35.     As a result, Mr. Valentine, in 2018 removed trees on his Property which were diseased and/or hazardous.

36.     On or about December 12, 2018 the Zoning Officer issued a violation notice to Mr. Valentine alleging fictitious violations of the Township Code including failure to remove the cut trees, failure to fence his livestock and failure to house his livestock.

37.     The Township Code distinguishes between livestock (large animals) and poultry.

38.     The Zoning Officer intentionally conflated livestock with poultry.

39.     At the time of the alleged "livestock" violations, Mr. Valentine had only poultry but no livestock.

40.     The violations in the paragraphs above were made at the urging of the Fire Marshall and were false.

41.     At the time of the alleged violations of December 12, 2018, Mr. Valentine could not fence his Property because the Neighbors has erected a fence and installed plantings on the Property which they would not timely remove.

42.     Mr. Valentine's only livestock in December of 2018 were chickens for which no shelter was required under the Code as they fall under the poultry classification of the Township Code.

43.     The December 12, 2018 violation notice was for the purposes of intimidating Mr. Valentine so that he stopped reporting the Neighbors' violations of the Township Code.

44.     In April of 2019, Mr. Valentine was issued a permit to construct a fence on the Property.

45.     After construction the Zoning Officer issued a violation of the fence permit, because the application says "chain link" but Mr. Valentine was using other fence materials.

46.     The Township Code does not regulate fence material, only fence height and location of fences.

47.     On or about April 30, 2019, Mr. Valentine, rather than fight the issue of the material used for his fence, applied a fence permit 9850 for a four foot and six-foot painted and wire fence.

48.     On or about April 30, 2019 the Zoning Officer requested a picture of the fence material to be used even though fence material is not regulated by the Township Code.

49.     On or about May 10, 2019 the Zoning Officer refused to issue the fence permit claiming that Mr. Valentine had an "open permit violation."

50.     The Zoning Officer's denial of the fence permit was pretextual in nature and appeared so on its face because the alleged permit violations had been remedied to the satisfaction of the Township in February of 2019.

51.     On or about May 10, 2019 another Township Official wrote or communicated verbally to Mr. Valentine claiming that the Mr. Valentine is not permitted to have an agricultural "use" within 50 feet of his property line.

52.     Once again, the letter was pretextual in nature and was written at the urging of the Fire Marshall as agricultural structures are prohibited within 50 feet of the property line while agricultural uses are permitted anywhere on the Property.

53.     In May of 2019, Mr. Valentine hired an ISA certified arborist ("Arborist") to confirm that the trees in the area of the Property flooded by the construction on the Neighbors' property were dead and/or dying.

8

54.     The Arborist confirmed that the trees in question were dead and/or dying and should be removed as they were a safety hazard and property damage risk.

55.     When Mr. Valentine approached the Township to remove the dead or dying trees the Zoning Officer insisted that he needed the approval of the Pinelands Commission.

56.     The New Jersey Pinelands Commission ("Pinelands Commission" or "Pinelands") is the State body which regulates activities in the New Jersey Pinelands under the Pineland's Act.

57.     On or about May 24, 2019 the Pinelands Commission confirmed that Mr. Valentine did not need Pinelands Commission approval to remove the dead and/or dying trees.

58.     On or about August 20, 2019, the Township Zoning Officer issued a letter continued to insist that in spite of receiving Pinelands Commission approval to remove the dead or dying trees that Pinelands approval was required after having received a letter form the Pinelands Commission that its approval was not necessary.

59.     The August 20, 2019 letter also asked Mr. Valentine to submit a plan of the trees for review.  The Township Code had no such requirement.

60.     In May of 2019, Mr. Valentine painted his fence on the property line with the Neighbors red, white and blue displaying his patriotic spirit and celebrating his status as a Veteran of the Armed Forces.

61.     In or about June 3, 2019, at the urging of the Fire Marshall, the Zoning Officer wrote and undated and unsigned letter to the Neighbors and Mr. Valentine implicitly allowing the Neighbors to continue their violations of the Township Code and suggesting that Mr. Valentine should paint his fence white or brown.

9

62.     The June 3, 2019 letter also suggested that Mr. Valentine build a pond for his ducks and demanded for him to address several other items which were not regulated under the Township Code."

63.     The Township Code does not regulate the color of fences.

64.     The Zoning Officer had intentionally interfered with the legal process in favor of the Neighbors and to curry favor with the Fire Marshall.

65.     In or about July of 2019 the Zoning Officer accused Mr. Valentine of clearing his Property and creating a pond in violation of the Township Code.

66.     The alleged "pond" was not created by Mr. Valentine, but was instead caused by the Neighbors having filled their property, changing the natural flow of storm water resulting in the death of the trees on the Property and the accumulation of water on the Property.

67.     Had the Township acted to correct the Neighbors' violations of the Township Code the trees would not have died and the pond would not have been created.

68.     On or about on the morning of July 19, 2019 Township Employees and at least two, armed Township police officers conducted an unwarranted and without legal necessity, raid on Mr. Valentine's Property (the "Raid").

69.     The Raid was unannounced as to Mr. Valentine.

70.     The Raid was led by Township employee, Ralph Manfredi ("Manfredi").

71.     At the time of the Raid, Manfredi was the Director of Code Enforcement for the Township.

72.     The alleged purpose was to inspect the Property to see if the "Berm" had been constructed or not. (See Paragraph 23 above).

73.     Mr. Valentine did in fact have a permit issued by the Township to construct the Berm on July 3, 2018 Permit number 8814 to construct a "Safety Berm".

74.     Accompanying Manfredi on the raid were, Zoning Officer, Tara Park, the and upon information and belief, Brian Glaze, Steven D'Amico and Lou Polillo, all Township Employees.

75.     The Zoning Officer, Tara Park had told individuals other Township employees and residents that Mr. Valentine was dangerous.

76.     The Zoning Officer, Rosemary Flaherty had in fact told one of the Neighbors that Mr. Valentine was a sociopath.

77.     The Raid commenced on the morning of July 22, when Manfredi trespassed on the Property without asking permission or announcing his presence and began to video record the Property and/or take pictures.

78.     Manfredi used his personal iPad for the recording purposes.

79.     Manfredi did not ask permission to take pictures of the Property.

80.     The Property was clearly posted with signs that trespassing was prohibited.

81.     The Raid was conducted by two police cars and three Official Township cars all parked on Blackhorse Pike publically in front of Plaintiffs' Property in broad daylight.

82.     At the time of the Raid the Property was occupied by Mr. Valentine, the mother of his child, Mr. Valentine's 9 year-old son and the 14 year-old daughter of Mr. Valentine's girlfriend.

83.     Having (2) armed officers and four (4) Township Officials enter upon the Property, unannounced and taking pictures made all of the occupants of the Property terrified, especially the children.

11

84.     At the time of the Raid Mr. Manfredi directly reported to the Mayor of the Township and was under the Mayor's direct supervision.

85.     Upon information and belief, the Raid was conducted with the permission and authorization of the Mayor of the Township, Richard DiLucia.

86.     Before the Raid started no Township Official asked Mr. Valentine  to inspect the Property for the presence of the Berm.

87.     Manfredi voice recorded the entire Raid in his iPad without notice to or the permission of Mr. Valentine.

88.     Mr. Manfredi has known and worked with the Fire Marshall for over twenty years.

89.     Mr. Manfredi was favorably disposed toward his fellow Township employee, the Fire Marshall and his family, the Neighbors.

90.     As part of the Raid, Manfredi was attempting to secure information which would be favorable to the Fire Marshall and the Neighbors.

91.     The Raid occurred within three months after Mr. Valentine had issued complaints against one of the Neighbors for alleged violations of N.J.S.A. 2C:33-4A, 2C:33-4C and 2C:18-3B, being disorderly persons charges alleging harassment and trespass on or about March 28, 2019 in the Township Municipal Court.

92.     One of the Neighbors (the Fire Marshall's son), was arrested on the charges on or about April 9, 2019.

93.     In spite of the overwhelming and excessive force the Raid was conducted without incident.

94.     At the time of the Raid and since the Defendants have provided no explanation as to why the Raid had to be unannounced.

95.     At the time of the Raid and since the Defendants have not provided an explanation why they did not ask for permission to inspect the Property before the Raid for the presence or absence of the Berm.

96.     At the time of the Raid and since the Defendants have provided no explanation why they used overwhelming force and armed police officers to conduct the Raid knowing that there were minor children on at the Property during the Raid.

97.     Manfredi had no authority to be present for the Raid as it was not within his jurisdiction or the scope of his duties in the Township.

98.     The Housing Code Inspector had no authority to be present for the Raid as there had been no allegation of a violation of the housing code by Mr. Valentine.

99.     The only purpose of having at least six Township Officials present including armed officers for the Raid was to intimidate Mr. Valentine for having filed disorderly persons charges against the Fire Marshall's son.

100.    A further purpose of the Raid was to intimidate Mr. Valentine as a witness in a criminal matter.

101.    A further purpose of the Raid was to intimidate Mr. Valentine as a witness and to interfere with a criminal prosecution.

102.    Upon information and belief, the Raid was orchestrated and directed by the Fire Marshall in retaliation for the disorderly persons charges lodged against his son by Mr. Valentine.

103.    When Manfredi was questioned under oath and asked if the Fire Marshall had asked him to write violations against Mr. Valentine he answered "Directly ask me that question, no, he did not."

104.    The Fire Marshall did ask Mr. Manfredi to inspect the Valentine Property.

105.    The Raid did not result in any citations or violations issued to the Plaintiffs.

106.    When the Raid was concluded, Manfredi did not include the voice recording in his report to the Township.

107.    When the Raid was concluded Mr. Manfredi allegedly did not tell the Mayor about the voice recording.

108.    Instead of having the voice recording of the Raid transcribed and lodged with the Township records, Manfredi gave a copy of the voice recording to the Neighbors.

109.    At the time of the Raid the Neighbors were contemplating litigation against Mr. Valentine.

110.    Upon information and belief, the Fire Marshall suggested that the voice recording be delivered by Manfredi to his daughter-in-law so as to attempt to conceal his role in the Raid.

111.    After the Raid the Township's harassment and intimidation actions against Mr. Valentine continued.

112.    The Raid was conducted without probable cause.

113.    The Raid was conducted without reasonable cause.

114.    The Raid resulted in no additional Zoning or Code violations being issued to Mr. Valentine.

115.    Mr. Valentine had previously obtained a Zoning Permit to install three light poles.

116.    Mr. Valentine had the light poles installed.

117.    By letter dated August 14, 2019 the Zoning Officer, RF "revoked" the previously issued Zoning Permit and directed Mr. Valentine to seek a variance from the Zoning Board.

118.    By letter of August 20, 2019 the Zoning Officer, RF continued to press Mr. Valentine regarding the issue of tree removal by asking him to submit a plan for tree removal, which had previously been submitted.

119.    By letter of July 1, 2020 the Zoning Officer, TP threatened Mr. Valentine for failing to obtain a Variance for the light poles and for a tree removal plan and report of an arborist regarding the health of his trees.

120.    The Zoning Officer had no legal authority to request a tree removal plan and report of an arborist regarding the health of his trees as there are no such requirements in the Township Code.

121.    By letter dated October 4, 2019 the Zoning Officer again threatened legal action against Mr. Valentine for not obtaining a variance for the light poles installed with the permit issued by the Township and again threatening action because of the tree removal issue over which she had no jurisdiction.

122.    On or about October of 2019, Mr. Valentine was in the Township Municipal Court regarding the disorderly person's charges against the Fire Marshall's son when the Fire Marshall appeared in the hallway of the court wearing his Fire Marshall Badge and said to Mr. Valentine that he would wipe the smile off of Mr. Valentine's face while holding his Fire Marshall's badge in Mr. Valentine's face.

123.    The act of the Fire Marshall on October of 2019 was clearly a threat of the use of his Township office to intimidate and threaten Mr. Valentine, a further act of witness intimidation.

124.     This statement was made after the Fire Marshall's son told Mr. Valentine words to the effect of "You better pack your sh_t and go back to Philly.  My Father owns this town and you will never be able to get anything done that we don't agree to."  There is audio of this threat.

125.     On or about July 21, 2020 the Zoning Officer, TP sent a letter to Mr. Valentine threatening to issue a violation regarding the location of his chicken coop and alleging that Mr. Valentine was in violation of the "International Property Maintenance Code."

126.     The allegations of the Code violation regarding the location of the chicken coop on the Property were baseless.

127.     The allegations of the violation of the International Property Maintenance Code were also baseless because the Township had never adopted the International Property Maintenance Code into its Code by ordinance.

128.     When confronted by Mr. Valentines' attorney about the alleged violations of the Code, on or about July 27, 2020 the Zoning Officer, TP then claimed the Valentine Property was not a "farm" although the Code and Zoning map indicate that the Property was situated in an agricultural use district and that Mr. Valentine had operated the Property as an agricultural use since June of 2020.

129.     While arguing that the Valentine Property was not a "farm," the Zoning Officer had previously issued Mr. Valentine a poultry license.

130.     By letter of August 13, 2020 some of the violations in the July 27, 2020 letter were withdrawn but the Zoning Officer, TP insisted that there was a continuing fence violation.

131.     By letter of August 21, 2020 the Zoning Officer, TP issued a new letter reinstating some of the alleged Code violations previously withdrawn by her letter of August 13, 2020.

132.     On or about September 3, 2020, Mr. Valentine applied for an "additional" fence permit as demanded by the Zoning Officer, TP which was not required by the Township Code.

133.     On or about September 10, 2020 the additional fence permit was granted.

134.     On or about October 16, 2020 Mr. Valentine submitted an application for Zoning Permit for farm accessory structures, which questioned the need for the application.

135.     On or about November 11, 2020 the application for Zoning Permit for farm accessory structures was denied and Mr. Valentine was cited for the construction of a feed shed structure or improvement which was never built.

136.     On March 24, 2022 the Zoning Officer, TP finally relented and reluctantly issued the Zoning Permit for farm accessory structures at the urging of the Township Solicitor.

137.     Paragraphs 1-136 above are only some of the facts giving rise to the causes of action alleged in this Complaint.

138.     The disparate treatment of the Plaintiffs vis a vis continues unabated to the date of this complaint.

139.     During the month of June 2022, the Neighbors removed an underground oil storage tank from their property without obtaining a permit.

140.     In or about September 2021, Mr. Valentine became concerned that a neighboring property at 1398 South Black Horse Pike, Williamston, New Jersey was storing several hundred flood damaged vehicles, leaking various pollutants into the sandy soil.

141.     Mr. Valentine was concerned that the leaking oil and other pollutants would damage the water quality of his well and harm the health of his animals.

142.     In or about September 2021 Mr. Valentine reported the issue to Tara Park.

17

143.    Upon information and belief, Township officials had either condoned or turned a blind eye to the improper creation of a junk yard in the Township and did not want action taken

144.    Within six (6) hours of the report to the Township of the illegally stored flood cars, Township Official Steven D'Amico ("D'Amico") issued two Code violations for Mr. Valentine's Property.

145.    The Code violations were baseless.

146.    D'Amico, being the Plumbing Sub-code official had no authority to issue the violations which have nothing to do with plumbing.

147.    The Fire Marshall has a personal animus with a certain Mr. Hennigan who was in litigation with the Fire Marshall's son and daughter in law.

148.    On or about March 10, 2021 at approximately 3:15 PM the Fire Marshall while in his official vehicle chased Mr. Hennigan's vehicle in a southerly direction on the Black Horse Pike in the Township.

149.    Mr. Hennigan made a left turn off of the Black Horse Pike and into Mr. Valentine's driveway in an attempt to escape from the Fire Marshall.

150.    Mr. Valentine's then 10 year old son had just gotten off of the school bus and was in the driveway.

151.    The Fire Marshall entered into Mr. Valentine's driveway, ignoring the no trespassing signs and engaged in a violent confrontation with Mr. Hennigan in the presence of the child.

152.    The Township has taken no steps to correct or punish the Fire Marshall for the March 10, 2021 altercation or any other improper conduct on the part of the Fire Marshall.

153.    The Fire Marshall acts with impunity within the Township.

154.     The Defendants to this action have refused to enforce the Township Code as to the Neighbors' property while unevenly, arbitrarily, unreasonably and capriciously enforcing the Township Code as to the Plaintiffs.

155.     The Defendants, acting together have conspired to deprive the Plaintiffs of their property and freedom by the arbitrary and capricious use of the Township Code as applied to the Plaintiffs.

156.     The Defendants entered into a pattern and practice of using pretextual violations of the Township Code to harass and damage the Plaintiffs.

156.     The Defendants entered into a pattern and practice of using pretextual violations of the Township Code to harass and damage the Plaintiffs knowing that the Plaintiffs would incur engineering, planning, surveying and legal fees to comply with the alleged Township Code Violations.

158.     The Defendants entered into a pattern and practice of using pretextual violations of the Township Code to harass and damage the Plaintiffs with the hope and intention of having Mr. Valentine sell his farm.

159.     The Defendants entered into a pattern and practice of using pretextual violations of the Township Code to harass and damage the Plaintiffs with the hope and intention of having Mr. Valentine cease reporting the Neighbors for their unenforced Township Code Violations.

160.     The Plaintiffs have suffered significant monetary damages as a result of the actions of the Defendants as stated herein.

161.     The Plaintiffs have suffered significant reputational damages as a result of the actions of the Defendant.

162.     The conduct of the Defendants was malicious and international.

163.   The Defendants acted intentionally and with malice directed at the Plaintiffs

164.   The Defendants acted in violation of their oaths of law to defend the laws and the constitution of the State of New Jersey and the United States.

165.   The Defendants' conduct, as stated herein, constituted Official Misconduct as prohibited by N.J.S.A. 2C:30-2.

166.   The Defendants' conduct, as stated herein constituted Official Deprivation of Civil Rights as prohibited by N.J.S.A. 2C:30-6 in that they conspired to deny or impede Plaintiffs in the lawful exercise or enjoyment of their rights, privileges, powers or immunities.

167.   The Plaintiffs have been denied the free and unfettered use of their Property.

168.   The Defendants have denied the Plaintiffs the right to peaceably own, use and occupy their Property without due process of law.

169.    The actions of the Defendants have denied the Plaintiffs their First Amendment rights without due process of law.

170.   The Defendants' actions as stated herein have denied the Plaintiffs their rights of property and freedom without due process of law

171.   The Defendants, acting under color of State law have deprived the Plaintiffs of their constitutionally guaranteed rights.

172.   The Defendants' actions as stated herein have denied the Plaintiffs their rights of property and freedom without due process of law.

173.   The Defendants' conduct, as herein stated constitute violations of 42 U.S.C. 1983.

174.   The damages incurred by Plaintiffs include, but are not limited to, humiliation, harassment, loss of farm profits, loss of business income, loss of wages, payment for professional fees and out of pocket costs to satisfy the unreasonable demands of the Zoning Officers and other

20

Township Officials and employees, fear, intimidation, pain and suffering.

## FIRST COUNT

## VIOLATIONS OF 42 U.S.C. 1983
### (Equal Protection)

175.    The Plaintiffs repeat all of the allegations hereinabove stated as if the same were set for herein at length.

176.    Pursuant to the equal protection clause of the Fifth and Fourteen Amendments of the Constitution of the United States, Plaintiffs are guaranteed equal protection under law.

177.    One of the purposes of said equal protection clause is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination whether occasioned by the expressed terms of a statue, ordinance or other law or by its improper execution through duly constituted agents.

178.    While at all times acting under the authority and color of law, the Defendants' actions and course of conduct, as aforementioned, in violating, *inter alia,* the express provisions of the MLUL to wit, N.J.S.A 40:55D-53(2), N.J.S.A. 40:55D-53(2) (j), N.J.S.A. 40:55D-49(a), and their fraudulent and deceptive misrepresentations and practices, have intentionally and arbitrarily discriminated against the Plaintiff.

179.    Accordingly, Plaintiffs have been denied and deprived of their equal protection rights under the law by the Defendants, as aforementioned, in violation of the Fifth and Fourteen Amendments of the Constitution of the United States.

**WHEREFORE**, Plaintiffs, John Valentine, and Valentine's Farm, LLC hereby demands judgment in its favor and against the Defendants, Salvatore "Skip" Tomarchio, Tara Park n/k/a Tara Nelms, Richard DiLucia, Rosemary Flaherty, Ralph Manfredi, Steven D'Amico, and Fictitious Defendants John Does 1-5 and Jane Does 1-5 as follows:

a.  Issuing such other Order, including an Order enjoining the Defendants from engaging in further discriminatory practices which violate the Plaintiff's rights under the Equal Protection Clause of the Fifth and Fourteen Amendments of the Constitution of the United States or ordering such other affirmative action or relief as this Court may deem to be just and appropriate;

b.  Awarding Plaintiff actual and punitive damages; and

c.  Awarding Plaintiff's reasonable attorneys' fees and costs of suit as permitted by law.

## SECOND COUNT

## VIOLATIONS OF 42 U.S.C. 1983

180.    The Plaintiffs repeat all of the allegations hereinabove stated as if the same were set for herein at length.

181.    The actions and course of conduct of the Defendants, as aforementioned, where undertaken pursuant to a policy originated, adopted, acknowledged, drafted or otherwise accepted by the Defendants.

182.    The Defendants, as a result of adopting and pursuing such a policy, have caused the deprivation of Plaintiff's rights under the laws of the United States, the Constitution of the State of New Jersey, and the laws of the State of New Jersey. The actions, harassment and course of conduct of said Defendants, as aforementioned, also constituted an unlawful denial of Plaintiff's rights to due process of law in violation of the Fifth and Fourteen Amendment to the United States Constitution. Therefore, Plaintiffs possess a cause of action against said Defendants pursuant to 42 U.S.C. §§1983 and 1988.

**WHEREFORE**, Plaintiffs, John Valentine, and Valentine's Farm, LLC hereby demands judgment in its favor and against the Defendants, Salvatore "Skip" Tomarchio, Tara Park n/k/a

Tara Nelms, Richard DiLucia, Rosemary Flaherty, Ralph Manfredi, Steven D'Amico, and Fictitious Defendants John Does 1-5 and Jane Does 1-5 as follows:

    a.  Issuing such other Order, including an Order enjoining the Defendants from engaging in further discriminatory practices which violate the Plaintiff's rights under the Equal Protection Clause of the Fifth and Fourteen Amendments of the Constitution of the United States or ordering such other affirmative action or relief as this Court may deem to be just and appropriate;

    b.  Awarding Plaintiff actual and punitive damages; and

    c.  Awarding Plaintiff's reasonable attorneys' fees and costs of suit as permitted by law.

<u>**THIRD COUNT**</u>

<u>**VIOLATIONS OF 42 U.S.C. 1983**</u>
**(Equal Protection)**

183.    The Plaintiffs repeat all of the allegations hereinabove stated as if the same were set for herein at length.

184.    The Defendants actions and course of conduct, as aforementioned, also had the effect of denying Plaintiff its rights under the procedural due process clause of the Fifth and Fourteen Amendments of the Constitution of the United States.

185.    Said Actions and course of conduct also deprive Plaintiffs of their rights under the laws and the Constitution of the State of New Jersey. Accordingly, Plaintiffs possess a cause of action against said Defendants, for the deprivation of its procedural due process rights, as aforesaid, pursuant to 42 <u>U.S.C.</u> §§1983 and 1988.

186.    As a result of Defendants' action and course of conduct, as aforesaid, in depriving Plaintiffs of its procedural due process rights under the Fifth and Fourteenth Amendments of the

Constitution of the United States, which actions were in further violation of Plaintiff's rights 42 U.S.C. §§1983 and 1988, Plaintiffs have suffered immediate and irreparable harm and damages for which it is entitled to relief under the law.

**WHEREFORE**, Plaintiffs, John Valentine, and Valentine's Farm, LLC hereby demands judgment in its favor and against the Defendants, Salvatore "Skip" Tomarchio, Tara Park n/k/a Tara Nelms, Richard DiLucia, Rosemary Flaherty, Ralph Manfredi, Steven D'Amico, and Fictitious Defendants John Does 1-5 and Jane Does 1-5 as follows:

    a.  Issuing such other Order, including an Order enjoining the Defendants from engaging in further discriminatory practices which violate the Plaintiff's rights under the Equal Protection Clause of the Fifth and Fourteen Amendments of the Constitution of the United States or ordering such other affirmative action or relief as this Court may deem to be just and appropriate;

    b.  Awarding Plaintiff actual and punitive damages; and

    c.  Awarding Plaintiff's reasonable attorneys' fees and costs of suit as permitted by law.

## FOURTH COUNT

## VIOLATIONS OF 42 U.S.C. 1983 AND 1988

187.    The Plaintiffs repeat all of the allegations hereinabove stated as if the same were set for herein at length.

188.    The Defendants', were taken within the scope of their employment as agents, servants and employees of the Defendant Township of Monroe is vicariously liable for the acts of their defendant agents, servants and employees.

189.    The actions of the Defendants and each of them constitute state action and interfere with Plaintiffs' constitutional right to freedom of expression, freedom of speech and constitutional rights of due process both substantive and procedural including the deprivation of the right to free and unhampered use and enjoyment of one's private property.

190.    As a direct and proximate result of the Defendants' actions aforementioned in the violation of the plaintiffs' constitutional rights as aforementioned, the plaintiffs were maliciously prosecuted, cited for violations, raided and unlawfully searched caused to suffer severe emotional distress, mental anguish, deprived of the free and unhampered use and enjoyment of their private property, forced to incur legal expenses to defend themselves in the enforcement of the Township  Code violations has caused embarrassment, shock, humiliation and such other damages all to their detriment in violation of 42 U.S.C. 1983 and 1988.

191.    The Defendant, Monroe Township has duty to the public and to the Plaintiffs to supervise and adequately educate and train the other named Defendants in the exercise of their job duties and official functions.

192.    The Defendant, Monroe Township was negligent, careless and reckless and deliberately indifferent in relation to the training and supervision of the individual Defendants.

193.    The Defendant, Monroe Township encouraged and influenced the other named Defendants to act in a manor detrimental to the rights of the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants jointly and severally and in the alternative for damages, punitive damages, attorney's fees and such other equitable relief as the court deems just and proper including an injunction prohibiting the Defendants from the continuing violation of the Plaintiff's constitutionally guaranteed and protected rights.

## FIFTH COUNT
## JOHN AND JAND DOE DEFENDANTS

194.    The Plaintiffs repeat all of the allegations hereinabove stated as if the same were set for herein at length.

195.    At the aforesaid time and place, the Defendant, John Does 1-5 and Jane Does 1-5, employees fictitious name(s) (hereinafter referred to as John Doe), were an unknown person or persons authorized to do business in the State of New Jersey, whose actions caused and/or contributed, directly or indirectly, to damages suffered by the Plaintiffs.

196.    The Plaintiff allege that an insufficient amount of time has passed within which to determine the identity of any other individuals who may be responsible in whole or in part for damages suffered by plaintiffs. For the purpose of the within complaint, said individuals have been nominated as John Doe 1-5 and Jane Does 1-4. The Plaintiffs, reserve the right to amend the within complaint relative to additional Defendants when, and if, the identity of said individuals or business entities becomes known.

**WHEREFORE**, plaintiff, demands judgment against defendants, John Doe 1-5 and Jane Does 1-5 damages, punitive damages plus interest, attorney's fees, cots of suit and such other relief as the court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Andrew J. Karcich, Esquire has been designated as trial counsel in this matter.

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 11.2</u>

I, Andrew J. Karcich, the undersigned attorney of record for Plaintiff, do hereby certify to my own knowledge and based upon information available to me at my office, the matter in controversy is not the subject of any other action now pending in any court or in any arbitration or administrative proceeding.

/s/ *Andrew J. Karcich*
Andrew J. Karcich
Lynch & Karcich, LLC
1000 White Horse Road, #703
Voorhees, NJ 08043
*Attorney for Plaintiff*